*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOSEPH SCHIEL, | ) | |
| | ) | Supreme Court No. S-13058 |
| Plaintiff, | ) | |
| | ) | U.S. District Court No. |
| v. | ) | 3:07-cv-00030 TMB |
| | ) | |
| UNION OIL COMPANY OF | ) | O P I N I O N |
| CALIFORNIA, | ) | |
| | ) | No. 6436 - November 20, 2009 |
| Defendant. | ) | |
| | ) | |

Certified Question from the United States District Court for the District of Alaska, Timothy M. Burgess, Judge.

Appearances: Peter R. Ehrhardt, Kenai, for Plaintiff. Erin B. Marston, Marston & Cole, P.C., Anchorage, for Defendant. John W. Erickson, Jr., Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Amicus Curiae State of Alaska. Gary M. Guarino, Assistant United States Attorney, and Nelson P. Cohen, United States Attorney, Anchorage, and Gregory G. Katsas, Assistant Attorney General, C. Frederick Beckner III, Deputy Assistant Attorney General, J. Patrick Glynn, Director, Torts Branch, David S. Fishback, Assistant Director, Adam Bain, Senior Trial Counsel, Department of Justice, Washington D.C., for Amicus Curiae United States of America.

Before: Fabe, Chief Justice, Eastaugh, Carpeneti, Winfree, and Christen, Justices.

CARPENETI, Justice.

## I. INTRODUCTION

We accepted certification in this case to determine whether the 2004 amendments to AS 23.30.045(a) and AS 23.30.055 violate the plaintiff's right to equal protection or due process under the Alaska Constitution. Applying minimum scrutiny, we hold that they do not.

## II. FACTS AND PROCEEDINGS

Joseph Schiel sued Union Oil Company of California (UNOCAL or the company) for injuries he suffered when he was working on UNOCAL's Grayling Drilling Platform. Schiel was an employee of Peak Oilfield Services at the time of the injury. He lost two fingers when he was going down a ladder and put his hand on a skid rail for balance; a rig jack moved on the skid rail and crushed his hand. Peak paid workers' compensation benefits to Schiel. Schiel brought a third-party tort action against UNOCAL in superior court, and the company removed the case to the United States District Court. After removal to federal court, UNOCAL moved for summary judgment, arguing that the Alaska Workers' Compensation Act[1] barred Schiel's tort claims because the company was Schiel's statutory employer and therefore immune from suit. Schiel opposed and filed a cross-motion for summary judgment, contending that the 2004 amendments to the act, which expanded its exclusive liability provisions to include project owners, violated the Equal Protection and Due Process Clauses of the Alaska Constitution. At the same time he filed his summary judgment motion, Schiel moved the

---

[1]    AS 23.30.001-.400.

United States District Court, citing Alaska Rule of Appellate Procedure 407,[2] to certify to this court the question of the constitutionality of these statutory amendments.

United States District Court Judge Timothy M. Burgess issued a certification order requesting that we answer two questions: (1) whether the 2004 amendments to AS 23.30.045(a) and .055 violate the Equal Protection provisions of the Alaska Constitution; and (2) whether the 2004 amendments to AS 23.30.045(a) and .055 violate the Due Process provisions of the Alaska Constitution. We agreed to accept certification, heard oral argument on the matter, and now answer both questions in the negative.

## III. STANDARD OF REVIEW

A decision by this court to accept a certified question from another court under Appellate Rule 407(a) involves determinative questions of Alaska law for which there is no controlling precedent.[3] "In deciding a certified question of law, we must 'stand in the shoes of the certifying court, yet exercise our independent judgment.' "[4] We

[2]    Rule 407(a) provides:

The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States, a United States district court, a United States bankruptcy court or United States bankruptcy appellate panel, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

[3]    *Kallstrom v. United States*, 43 P.3d 162, 164-65 (Alaska 2002).

[4]    *Edenshaw v. Safeway, Inc.*, 186 P.3d 568, 569 (Alaska 2008) (quoting *Berg*
(continued...)

Case 3:07-cv-00030-TMB   Document 56   Filed 11/23/09   Page 3 of 22

exercise our independent judgment, selecting the rule of law that is most persuasive in light of precedent, reason, and policy.[5]

## IV. DISCUSSION

### A. Alaska Statutes 23.30.045(a) and 23.30.055 Do Not Violate Schiel's Right to Equal Protection Under the Alaska Constitution.

In 2004 the Twenty-Third Alaska State Legislature amended the Alaska Workers' Compensation Act, extending liability for workers' compensation coverage to project owners and providing immunity from tort liability to both general contractors and project owners.[6] Before enactment of these amendments, a general contractor was liable for workers' compensation benefits to a subcontractor's employee when the subcontractor failed to secure workers' compensation;[7] in addition, an injured worker could sue a general contractor for negligence even though the general contractor had paid workers' compensation benefits because the general contractor was not an employer as defined in former AS 23.30.055.[8]

Alaska Statute 23.30.045(a) now provides:

An employer is liable for and shall secure the payment to employees of compensation payable under AS 23.30.041, 23.30.050, 23.30.095, 23.30.145, and 23.30.180 – 23.30.215. If the employer is a subcontractor and fails to secure the payment of compensation to its employees, the contractor is

---

[4] (...continued)
v. Popham, 113 P.3d 604, 607 (Alaska 2005)).

[5] Kallstrom, 43 P.3d at 165 (citing M.A. v. United States, 951 P.2d 851, 853 (Alaska 1998)).

[6] Ch. 80, SLA 2004.

[7] Former AS 23.30.045.

[8] Miller v. Northside Danzi Constr. Co., 629 P.2d 1389, 1391 (Alaska 1981).

-4-                                                                                        6436

liable for and shall secure the payment of compensation to employees of the subcontractor. If the employer is a contractor and fails to secure the payment of compensation to its employees or the employees of a subcontractor, the project owner is liable for and shall secure the payment of the compensation to employees of the contractor and employees of a subcontractor, as applicable.[9]

The 2004 amendments expanded the definition of "employer" for purposes of the exclusive liability provision of the workers' compensation act to include any person who is potentially liable for securing payment of compensation.[10]

Schiel argues that the 2004 amendments to AS 23.30.045(a) and .055 violate his right to equal protection under the Alaska Constitution because they impermissibly classify injured workers into two classes — those who can sue in tort and recover full damages for their injury and those who are limited to receiving workers' compensation benefits.[11] UNOCAL asserts that the workers' compensation statute already makes this classification, so any equal protection challenge should focus on the statute's classification of potential third-party defendants. We agree with Schiel that he

---

[9] This type of statute is referred to as a "contractor-under" or "statutory-employer" statute. *See* 6 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 111.04[1][a] (2008).

[10] Ch. 80, § 4, SLA 2004 (codified at AS 23.30.055).

[11] At oral argument before us, Schiel also argued that the legislation impermissibly classified employers into two classes: those who can seek reimbursement from third-party tortfeasors for workers' compensation benefits and those who cannot. Because Schiel did not raise this argument in his briefing, it is waived. *Kellis v. Crites*, 20 P.3d 1112, 1114-15 (Alaska 2001) (citing *Gunderson v. Univ. of Alaska, Fairbanks*, 902 P.2d 323, 327 n.5 (Alaska 1995)).

-5-                                                                                      6436

meets the threshold showing of different treatment of similarly situated individuals.[12] As Schiel points out, if a project owner and subcontractor are equally negligent in causing a job site accident that injures their employees, the project owner's employees can potentially recover both tort damages and workers' compensation benefits, while the subcontractor's employees are limited to workers' compensation benefits. But the question before us is whether this disparate treatment violates the constitution.

Article I, section 1 of the Alaska Constitution provides in part "that all persons are equal and entitled to equal rights, opportunities, and protection under the law." To determine whether a statute violates the Equal Protection Clause of the Alaska Constitution, we apply a "sliding scale approach which places a greater or lesser burden on the state to justify a classification depending on the importance of the individual right involved."[13] "Equal protection analysis involves a three-step process under the Alaska Constitution, in which the court determines the weight of the individual interest at stake, the importance of the government's interest, and the closeness of the fit between the statute and the government's objective."[14] For individual interests that are not very important, the state only needs to show that its objectives are legitimate and that the

---

[12] *See Glover v. State, Dep't of Transp., Alaska Marine Highway Sys.*, 175 P.3d 1240, 1257 (Alaska 2008) (citing *Matanuska-Susitna Borough Sch. Dist. v. State*, 931 P.2d 391, 397 (Alaska 1997) (stating that litigant must show different treatment of similarly situated individuals to satisfy the threshold requirement of an equal protection claim)).

[13] *C.J. v. State, Dep't of Corr.*, 151 P.3d 373, 378 (Alaska 2006) (quoting *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 993 P.2d 1018, 1022 (Alaska 1999); *Alaska Pac. Assur. Co. v. Brown*, 687 P.2d 264, 269 (Alaska 1984)) (internal quotation marks omitted).

[14] *Glover*, 175 P.3d at 1256.

-6-                                                                                     6436

legislation bears a substantial relationship to its purpose.[15] On the other hand, if the legislation impairs "one of the most important individual interests," the statute must further a compelling state interest and be the least restrictive means available to accomplish the state's purpose.[16] Legislation that impacts "important" rights must have a close relationship to an important state interest.[17]

### 1. Schiel's interest is economic.

Schiel asks us to consider his interest "important" rather than simply "economic," relying on cases that have identified the ability to engage in a particular occupation or trade as "important." UNOCAL and amicus curiae the State of Alaska contend that the interest involved is economic and only entitled to minimum scrutiny, although they characterize the economic interest differently. The state identifies Schiel's interest as the right to receive benefits for a work-related injury, while UNOCAL classifies it as the right to seek tort damages.

We have held both that an interest in workers' compensation benefits and the right to seek tort damages are economic interests subject to minimum scrutiny.[18]

---

[15]  *Id.* at 1257 (quoting *C.J.*, 151 P.3d at 378).

[16]  *C.J.*, 151 P.3d at 378 (citing *State, Dep'ts of Transp. & Labor v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 631-32 (Alaska 1989)).

[17]  *Malabed v. N. Slope Borough*, 70 P.3d 416, 421 (Alaska 2003) (citing *Enserch Alaska Constr., Inc.*, 787 P.2d at 633).

[18]  *Williams v. State, Dep't of Revenue*, 895 P.2d 99, 104 (Alaska 1995) (holding that workers' compensation benefits are an economic interest); *C.J.*, 151 P.3d at 379 (holding that restrictions on types and amounts of damages that can be pursued in court "impair economic interests only").

-7-                                            6436

Therefore, the interest at stake here is subject only to minimum scrutiny. We have also held that there is no fundamental right to sue a specific party.[19]

The cases on which Schiel relies in arguing that his interest is important are distinguishable. *Malabed v. North Slope Borough*[20] and *State, Departments of Transportation and Labor v. Enserch Alaska Construction, Inc.*[21] involved constitutional challenges to laws that restricted employment opportunities for some workers. *Malabed* involved a challenge to a North Slope Borough ordinance that created mandatory employment-related preferences for Native Americans in borough government.[22] *Enserch Alaska Construction, Inc.* concerned a challenge to a state statute that created certain local-hire preferences in public works projects.[23]

Schiel does not show how his inability to sue the project owner for negligence is tied to employment. Instead, he asserts that his loss of earning capacity from the work-related injury and his inability to be fully compensated for the injury impair his ability to sustain himself and therefore affect an important economic interest.[24] But as UNOCAL points out, a damages award against a third party is not the same as a

---

[19]  *Turner Constr. Co. v. Scales*, 752 P.2d 467, 471 (Alaska 1988).

[20]  70 P.3d 416 (Alaska 2003).

[21]  787 P.2d 624 (Alaska 1989).

[22]  *Malabed*, 70 P.3d at 418-19.

[23]  *Enserch Alaska Constr., Inc.*, 787 P.2d at 625-26.

[24]  *Cf. Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 993 P.2d 1018, 1023-24 (Alaska 1999) (noting that construction work is "a source of sustaining income" while foster care is not).

-8-                                                                                    6436

source of sustaining income.[25] Schiel's argument could apply to many injured workers who have never been able to sue a third-party tortfeasor — the amount of workers' compensation benefits may not fully compensate an injured worker for his loss and the injury may prevent him from returning to work in a specific industry, thereby interfering with his ability to sustain himself. Yet we have held that the interest in receiving workers' compensation benefits is an economic interest that is subject only to minimum scrutiny.[26] We recognize that the workers' compensation system may yield inequities in some cases: As we noted in *C.J. v. State, Department of Corrections*, "[w]orkers whose wages are low, who have been the victims of blatantly negligent conduct, or who suffer exceptional noneconomic injuries bear the brunt of a system that may benefit their co-workers or employers but certainly does not benefit them."[27] Schiel's interest is no different from that of the worker in *Glover v. State, Department of Transportation, Alaska Marine Highway System*:[28] "the right to sue the entity of his choice and potentially the ability to collect a greater amount of money."[29] That interest is economic.[30] The 2004 amendments to AS 23.30.045 and .055 are therefore subject to minimum scrutiny.

---

[25]     *See C.J. v. State, Dep't of Corr.*, 151 P.3d 373, 379-80 (Alaska 2006) (stating that noneconomic damages are not a source of sustaining income).

[26]     *Gilmore v. Alaska Workers' Comp. Bd.*, 882 P.2d 922, 927 (Alaska 1994), *superceded by statute on other grounds as recognized in Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 797 (Alaska 2002).

[27]     *C.J.*, 151 P.3d at 381.

[28]     175 P.3d 1240 (Alaska 2008).

[29]     *Id.* at 1258.

[30]     *Id.*

6436

## 2.    The state's objectives are legitimate.

The next step of equal protection analysis is to identify the state's objectives to see if they are legitimate.[31] We consider the challenged statutory provisions in light of the purposes of the entire workers' compensation act as well as the 2004 amendments.[32] Based on statements made by legislators during consideration of the 2004 amendments,[33] the parties and amici curiae identify several legislative objectives: to ensure or expand workers' compensation coverage for workers, to increase workplace safety, to prevent "double dipping," and to provide protection from tort liability to those who are potentially liable for securing workers' compensation coverage. All of these purposes are legitimate.

Schiel concedes that extending workers' compensation coverage is a legitimate state interest but contends that absent some evidence that there was a significant problem with employers failing to provide coverage, the legislature was simply "solving a nonexistent problem." Schiel also asserted at oral argument before us that the amendments were unnecessary because AS 23.30.165 gave an injured employee the right to file a lien on property related to his job, making a property owner potentially liable for workers' compensation benefits even before the 2004 amendments.[34] Whether

---

[31]    *Chiropractors for Justice v. State*, 895 P.2d 962, 968 (Alaska 1995) (citing *Alaska Pac. Assur. Co. v. Brown*, 687 P.2d 264, 269 (Alaska 1984)).

[32]    *Id.* at 969.

[33]    *Cf. Interior Cabaret, Hotel, Restaurant & Retailers Ass'n v. Fairbanks N. Star Borough*, 135 P.3d 1000, 1006 (Alaska 2006) (quoting drafter testimony and sponsor statement to show legislative intent). The 2004 amendments had no separate statement of legislative intent. *See* ch. 80, SLA 2004.

[34]    Schiel's argument that a worker could effectively get compensation benefits
                                                                                (continued...)

-10-                                                              6436

legislative action is necessary to solve a specific problem does not determine whether a legislative goal is legitimate. A legislative goal is legitimate if it properly falls within the police power of the state.[35] We have recognized that the purpose of the Alaska Workers' Compensation Act — ensuring the quick, efficient, fair, and predictable delivery of indemnification and medical benefits to injured workers at a reasonable cost to employers — is a legitimate goal.[36] Expanding or ensuring coverage for workers is also a legitimate goal.

Schiel takes issue with two of the identified objectives: preventing "double dipping" and providing protection for entities that are only potentially liable, rather than actually liable, for workers' compensation benefits. Schiel argues that "double dipping," in the sense of an injured worker getting a double recovery, was legally impossible before the 2004 amendments, so elimination of that type of "double dipping" would not be a legitimate objective of the legislation. Our review of the legislative history leads us

---

[34] (...continued)

from a project owner because of the lien provisions of the act appears to be incorrect. AS 23.30.165 permits an employee or beneficiary entitled to compensation to file a lien on "all of the property in connection with the construction, preservation, maintenance, or operation of which the worker of the employee was being performed at the time of the injury or death." A lien under this section extends only to the employer's interest in the property affected by the lien. AS 23.30.165(c). Before the 2004 amendments, a project owner was not an employer under the workers' compensation act. *See* former AS 23.30.055, .395(13) (2004). The 2004 amendments made a project owner an employer only for purposes of AS 23.30.055.

[35] *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1264 (Alaska 1980) (quoting *State v. Erickson*, 574 P.2d 1, 12 (Alaska 1978)).

[36] *Williams v. State, Dep't of Revenue*, 895 P.2d 99, 104 (Alaska 1995) (quoting ch. 79, § 1, SLA 1988).

-11- **6436**

to conclude that the legislature was concerned with employers having to pay both for workers' compensation benefits and for tort damages.[37]

Even though an employer who secured workers' compensation insurance was immune from suit under the former statute, it could agree in a contract to indemnify a potential third party for damages arising from a work-related accident.[38] The master services contract between UNOCAL and Peak had an indemnification provision requiring Peak to indemnify UNOCAL for any damages related to personal injury at the work site. The legislature appears to have been interested in protecting contractors who paid workers' compensation benefits from having to indemnify the project owner for damages: Senator Ralph Seekins, sponsor of the legislation, cited an example of a subcontractor who had to pay workers' compensation benefits but, because of an indemnification agreement, also had to defend against a tort suit the worker filed against the project owner.[39]

Several witnesses testified in favor of the bill because it would prevent companies from having to pay both workers' compensation benefits and tort damages.

---

[37]     The parties agree that "double dipping" was used to mean different things during the legislative hearings about the amendments, including prevention of double payment. "Double dipping" is defined as "the practice of receiving compensation, benefits, etc. from two or more sources in a way regarded as unethical, as from a military pension and a government job." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 428 (4th ed. 2004).

[38]     *See Golden Valley Elec. Ass'n, Inc. v. City Elec. Serv., Inc.*, 518 P.2d 65, 67 (Alaska 1974) (holding that exclusive remedy provision of workers' compensation statute precluded contractor from seeking indemnification from subcontractor in absence of express contractual agreement).

[39]     Aside from indemnification agreements, before the 2004 amendments, a general contractor could be liable for both workers' compensation and tort damages. *Miller v. Northside Danzi Constr. Co.*, 629 P.2d 1389, 1391 (Alaska 1981).

-12-                                                              6436

Jack Miller, counsel to the Alaska State Chamber of Commerce, testified that the state, municipalities, and private companies all imposed liability for both workers' compensation and tort remedies onto the subcontractor or contractor, so that these employers had "a double liability under current law." Eden Larson, president of the Associated Builders and Contractors, supported the legislation because of concerns about contractors having to pay both workers' compensation benefits and tort damages under indemnification agreements.

Prevention of double payment by an employer is a legitimate state interest because it protects the basic trade-off that underlies the workers' compensation system: workers receive compensation for work-related injuries regardless of fault, and employers have limited liability.[40] Preventing double payment is also related to the workers' compensation act's purpose of ensuring "the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of this chapter."[41] Some witnesses questioned whether preventing double payment was a legitimate legislative goal because those who were paying twice were contracting away their own rights, but there is no question that double payment is an issue appropriate for legislative action, even if it might have been addressed differently elsewhere.[42]

---

[40]     *See Wright v. Action Vending Co.*, 544 P.2d 82, 84-85 (Alaska 1975) (quoting *Smither & Co. v. Coles*, 242 F.2d 220, 222 (U.S. App. D.C. 1957)) (noting that anything that erodes exclusive liability or recovery strikes at foundation of system).

[41]     AS 23.30.001(1).

[42]     *See Roberts v. Gray's Crane & Rigging, Inc.*, 697 P.2d 985, 989-90 (Or. App. 1985) (discussing legislative history of bill related to prohibiting indemnification agreements).

-13-                                                                                     6436

Providing protection from tort liability for those who are potentially liable for workers' compensation benefits is also consistent with the basic trade-off that underlies the workers' compensation system[43] and is related to providing coverage to workers at a reasonable cost to employers. The legislature extended liability for workers' compensation to project owners and in exchange provided them with protection from tort suits. Although a project owner may rarely pay workers' compensation benefits, as Larson's treatise notes, a general contractor or project owner is "under a continuing potential liability; it has thus assumed a burden in exchange for which it might well be entitled to immunity from damage suits, regardless of whether on the facts of a particular case actual liability exists."[44] For all of the reasons we have discussed, we conclude that the legislature's objectives in enacting the 2004 amendments to AS 23.30.045 and .055 are legitimate.

### 4. The legislation bears a fair and substantial relationship to the state's objectives.

The final step in equal protection analysis involving an economic interest is to determine whether the challenged legislation bears a fair and substantial relationship to the state's objectives.[45] We hold that the 2004 amendments have a fair and substantial relationship to the state's objectives. The amendments plainly further the act's goal of ensuring provision of workers' compensation benefits at a reasonable cost to employers

---

[43]     *See Taylor v. Southeast-Harrison W. Corp.*, 694 P.2d 1160, 1162 (Alaska 1985) (explaining workers' compensation scheme as trade-off, wherein employer renders itself absolutely liable in exchange for employee giving up employee's other remedies at law).

[44]     6 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 111.04[1][b] (2008).

[45]     *Chiropractors for Justice v. State*, 895 P.2d 962, 972 (Alaska 1995).

-14-                                                6436

by (1) preventing double payment by subcontractors because the general contractor and project owner can no longer be sued for tort damages and (2) shielding those who are potentially liable for benefits from negligence claims.

Schiel argues that the 2004 amendments do not have a sufficiently close fit to the legislature's goals to withstand an equal protection challenge, maintaining that they took away rights from injured workers "without any meaningful *quid pro quo*." He contends that the legislature should have extended the exclusive remedy provision only to those general contractors or project owners who actually paid workers' compensation benefits, not to all who might be potentially liable for payment of benefits, essentially saying that the legislature should have provided a closer fit between the objectives and the legislation.

But we have never required a perfect fit between a legislative classification and a goal when applying minimum scrutiny.[46] As we noted in *C.J. v. State, Department of Corrections*,[47] "policies reviewed under minimum scrutiny are not unconstitutional simply because a litigant is able to propose a regulation that would further the legislative goal in a more rational manner."[48] Although it may not happen in many cases, a contractor may not have workers' compensation insurance. By extending liability for workers' compensation to project owners, the 2004 amendments provide workers with

---

[46] *See Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 993 P.2d 1018, 1024 (Alaska 1999) (citing *State v. Anthony*, 810 P.2d 155, 161 (Alaska 1991); *State v. Ostrosky*, 667 P.2d 1184, 1193 (Alaska 1983); *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1267 (Alaska 1980)).

[47] 151 P.3d 373 (Alaska 2006).

[48] *Id.* at 380 (citing *Wilson v. Municipality of Anchorage*, 669 P.2d 569, 573 (Alaska 1983)).

-15- **6436**

more entities that can be held liable for workers' compensation.[49] In addition, in an instance where no employer has obtained workers' compensation insurance, a general contractor or project owner may have more income or assets available to pay an injured worker, which could benefit some injured workers.[50] The justification for permitting the employee of a project owner to sue a subcontractor for negligence but not permitting the employee of a subcontractor to sue the project owner is that the subcontractor would never be liable to the project owner's employee for workers' compensation benefits while a project owner might be liable for workers' compensation benefits to the subcontractor's employee. Even though the change in policy adversely impacts some injured workers, like Schiel, it may benefit others.

Schiel also argues that the 2004 amendments were not necessary because the law already required employers to secure workers' compensation insurance and provided remedies in the event the employer failed to do so. But the legislature could decide that the available remedies, such as a prohibition on raising certain defenses in a negligence action and possible fines or stop work orders,[51] did not adequately address the issue of uninsured contractors. The legislature has the power to substitute or add remedies to address the problem of subcontractors or contractors who did not carry workers' compensation insurance.

In sum, because the 2004 amendments to the workers' compensation statute deal with an economic interest and bear a fair and substantial relationship to legitimate

---

[49]     Ch. 80, § 1, SLA 2004.

[50]     *See* AS 23.30.055 (permitting employee to sue if employer "fails to secure payment of compensation").

[51]     *See* former AS 23.30.055, .075, .080.

-16-                                                                                    6436

state goals, they do not violate Schiel's right to equal protection under the Alaska Constitution.

## C. The 2004 Amendments Do Not Violate Schiel's Procedural Due Process Rights.

Schiel next argues that the 2004 amendments violate his right to procedural due process because they deny him access to the courts. According to Schiel, AS 23.30.055 restricts his access to the courts by denying him the opportunity to bring a negligence action against the project owner and fails to provide an adequate alternative remedy for him to seek redress. UNOCAL and amici curiae reply that Schiel's alternative remedy is the workers' compensation system. Schiel responds that the state has not provided a substitute remedy to him but has "simply erased [his] right to access the courts."

We held in *Bush v. Reid*[52] that the Due Process Clause of the Alaska Constitution encompasses a right of access to the courts.[53] Article I, section 7 of the Alaska Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. To determine whether a government action violates due process, we apply the three-part test from *Mathews v. Eldridge*.[54] As adopted for Alaska, the test balances:

> (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that

---

[52]   516 P.2d 1215 (Alaska 1973).

[53]   *Id.* at 1217-20.

[54]   424 U.S. 319, 335 (1976).

-17-

additional or substitute procedural requirements would entail.[55]

Here, Schiel identifies his private interest as his right to bring a tort claim for his injury or as a right of access to the courts, which he says is an important right. UNOCAL asserts that Schiel's right of access to the courts is not implicated by the 2004 amendments, noting that the right of access to the courts is infringed only when government action completely bars access and provides no alternative remedy. Amicus curiae the State of Alaska asserts that Schiel still has the opportunity to be heard at a meaningful time and in a meaningful manner because he can bring a workers' compensation claim. (And, in fact, Schiel has done so.) Amicus curiae the United States echoes this assertion, maintaining that Schiel's due process rights are not violated because the workers' compensation system provides a substantial and efficient remedy for injured workers.

We hold that Schiel's right to access the courts is not infringed by the 2004 amendments to the workers' compensation act because he still has a substantial and efficient remedy available. We previously examined whether the exclusive liability provision of the Alaska Workers' Compensation Act violated due process by restricting access to the courts in *Arctic Structures, Inc. v. Wedmore*.[56] There, a worker sued a number of parties after he fell from scaffolding at work.[57] The worker's employer, a subcontractor, was immune from suit because of the exclusive liability section of the

---

[55]   *Sands v. Green*, 156 P.3d 1130, 1134 (Alaska 2007) (quoting *Varilek v. City of Houston*, 104 P.3d 849, 853 (Alaska 2004)) (internal quotation marks omitted).

[56]   605 P.2d 426, 436-37 (Alaska 1979).

[57]   *Id.* at 427-28.

Case 3:07-cv-00030-TMB   Document 56   Filed 11/23/09   Page 18 of 22

workers' compensation statute.[58] The project management company argued that the exclusive liability provision of the workers' compensation act violated its right of access to the courts because it was unable to raise the defense of the employer's contributory negligence.[59] We stated there that due process "require[s] that a substantial and efficient remedy remains available or that one be provided when a preexisting defense is statutorily limited."[60]

The alternative remedy of workers' compensation is a sufficient alternative remedy for Schiel, just as it was for the injured worker in *Glover.*[61] Schiel's case may initially appear different from *Glover* because Schiel could already get workers' compensation benefits from his employer and now has no ability to recover negligence damages from UNOCAL. In contrast, *Glover* involved substituting a workers' compensation claim for a civil suit under the Jones Act.[62] But Schiel has already received some compensation for his injury, even though it is limited to workers' compensation benefits.[63] The expansion of the exclusive liability provision does not

---

[58]     *Id.* at 427, 435-37.

[59]     *Id.* at 436.

[60]     *Id.*

[61]     *Glover v. State, Dep't of Transp., Alaska Marine Highway Sys.,* 175 P.3d 1240, 1256 (Alaska 2008).

[62]     *Id.* at 1244.

[63]     Schiel did not argue that the amount of workers' compensation benefits was so low as to deprive him of a substantial remedy. Counsel for UNOCAL agreed at oral argument before us that at a certain level, inadequate benefits could violate a worker's due process rights.

-19-                                                                                    **6436**

"erect[] a direct and 'insurmountable barrier' in front of the courthouse doors"[64] even if it does limit the amount of damages Schiel is able to recover for his injury.

We rejected an argument similar to Schiel's in *McCarter v. Alaska National Insurance Co.*[65] There, an injured worker argued that his right of access to the courts was violated by AS 23.30.015(g), which required him to pay all of the proceeds of a third-party claim to his employer to reimburse the employer for workers' compensation benefits.[66] The worker also argued, as Schiel does here, that the statute deprived him of a previously available right.[67] We found no constitutional violation there, noting that "there is no Constitutional right to retain the proceeds of a third party settlement where the amount of the settlement plus the compensation benefits do not grant full legal redress to the injured worker."[68] Because Schiel is still able to get compensation for his work-related injury through the workers' compensation system, the 2004 amendments do not implicate his right of access to the courts.

**D.    Alaska Statute 23.30.055 Does Not Violate Schiel's Substantive Due Process Rights.**

Finally, Schiel argues that as applied to the facts of his case, AS 23.30.055 violates his right to substantive due process. He contends that the differential treatment he receives because he is employed by a subcontractor rather than the project owner has no rational relationship to legitimate state goals. UNOCAL and amici curiae answer that

---

[64]    *Sands v. Green*, 156 P.3d 1130, 1134 (Alaska 2007) (quoting *Varilek v. City of Houston*, 104 P.3d 849, 853-55 (Alaska 2004)).

[65]    883 P.2d 986 (Alaska 1994).

[66]    *Id.* at 990.

[67]    *Id.* at 991.

[68]    *Id.* at 990-91 (internal quotation marks omitted).

Case 3:07-cv-00030-TMB   Document 56   Filed 11/23/09   Page 20 of 22

the legislation is rationally related to a legitimate government interest and therefore does not violate Schiel's substantive due process rights.

For a law to violate substantive due process, it must have "no reasonable relationship to a legitimate governmental purpose."[69] Because we have determined that the 2004 amendments do not violate the equal protection clause of the Alaska Constitution, we hold that the amendments do not violate substantive due process.[70]

The 2004 amendments have a reasonable relationship to the legitimate governmental purpose of expanding workers' compensation coverage. Schiel concedes that enhancing the certainty that an injured worker will receive workers' compensation benefits is a legitimate legislative purpose. Even a small increase in the number of workers receiving workers' compensation benefits would justify the legislature's action.[71] By expanding the entities that are potentially liable for workers' compensation benefits, the 2004 amendments are reasonably related to this goal.

Alaska Statute 23.30.055 is also rationally related to preventing payment of both workers' compensation benefits and tort damages by one employer and to shielding an employer who is potentially liable for workers' compensation benefits from suit. As discussed above, the rationale for treating an employee of a subcontractor

---

[69]    *Premera Blue Cross v. State, Dep't of Commerce, Comty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1124 (Alaska 2007) (quoting *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974)).

[70]    *Cf. id.* at 1124-25 (stating that a statute that meets the higher equal protection standard will always satisfy the demands of substantive due process).

[71]    *Cf. State v. Niedermeyer*, 14 P.3d 264, 267 (Alaska 2000) (noting that "even a modest statistical increase in accident rates might give the legislature a rational basis for action aimed at discouraging potential underage drivers from possessing or drinking alcohol").

-21-                                                                                          6436

differently from the employee of the project owner is that the subcontractor is not liable for workers' compensation benefits to the project owner's employee. Although Schiel is almost certainly disadvantaged by the 2004 amendments, the amendments do not violate his substantive due process rights.

## V.    CONCLUSION

We hold that the 2004 amendments to AS 23.30.045(a) and .055 do not violate Schiel's rights to equal protection and due process under the Alaska Constitution.

**6436**